IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| RODRIQUEZ D. LEAK, § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | Civil Action No. 3:10-CV-0541-M (BF) |
| § | |
| COMMISSIONER OF SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
| **Defendant.** § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Rodriquez D. Leak ("Plaintiff") brought this action pursuant to section 405(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g). He seeks review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his applications for Title II and Title XVI benefits under 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).

**I. BACKGROUND**

*A. Procedural History*

On March 19, 2007, Plaintiff filed applications for Title II and Title XVI benefits, alleging a disability onset date of September 30, 1999, due to narcolepsy. (Tr. 11; 49; 117-19; 125-26; 142.) After initial and reconsideration determinations denying Plaintiff's claims, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 73-82; 85-92.) On November 13, 2008, the ALJ held a hearing, at which Plaintiff, a vocational expert

("VE"), and Plaintiff's wife testified. (Tr. 11; 19.) The ALJ issued his decision on April 13, 2009, finding Plaintiff not disabled within the meaning of the Act. (Tr. 8.) Plaintiff requested and was denied review of the ALJ's decision by the Appeals Council. (Tr. 1; 5.) Plaintiff filed this case on March 5, 2010, seeking judicial review of the administrative proceedings. (Doc. 1.) This matter is ripe for consideration on the merits.

### B. Factual History

#### 1. Plaintiff's Age, Education, and Work Experience

At the time of the hearing, Plaintiff was thirty-three years old. (Tr. 33.) He dropped out of school in the tenth grade and did not obtain a high school equivalency diploma. (Tr. 33-34.) Plaintiff has past relevant work as a cafeteria attendant and security guard. (Tr. 18; 33; 36; 65.) Although he held twenty-nine different jobs between 1992 and 1999, only two were performed at the substantial gainful activity level. (Tr. 36; 131-35.)

#### 2. Plaintiff's Medical Evidence

Plaintiff was referred to Dr. Motgi, a neurologist, at the request of the State Agency. (Tr. 15; 192.) Dr. Motgi examined Plaintiff on May 9, 2007. (Tr. 195.) Plaintiff reported a history of narcolepsy since age 11 but said that he had not been on any form of treatment recently. (Tr. 192.) He told Dr. Motgi that although he has tried to do various types of work, he has difficulty staying awake and falls asleep a number of times per day. (Tr. 192.) He also advised the doctor that he sometimes loses complete strength and falls down. (Tr. 192.) He had not seen either a psychiatrist or neurologist in a number of years. (Tr. 192.) His main complaint was multiple sleep episodes during the daytime. (Tr. 192.) Dr. Motgi recommended that Plaintiff undergo sleep studies. (Tr. 193.) He advised that if the diagnosis

of narcolepsy was reconfirmed, Plaintiff could benefit from various forms of treatment which could help him stay awake. (Tr. 193.) He also advised that, if treated, the prognosis for gainful employment is fairly good. (Tr. 193.)

Records of Parkland Hospital ("Parkland") show that, on August 9, 2007, the Ambulatory Care Center saw Plaintiff, who complained of narcolepsy and requested a referral to a neurologist. (Tr. 236). He reported that he had not been on medication in over ten years. (Tr. 235). Plaintiff returned to Parkland on January 23, 2008, reporting a history of daytime sleepiness and cataplexy. (Tr. 234.) He said a doctor had prescribed Ritalin previously, but it had no effect. (Tr. 234.) His clinical presentation was suggestive of narcolepsy, and the doctor referred him for a sleep study. (Tr. 233.)

Plaintiff underwent a sleep latency test on June 24, 2008. (Tr. 223.) This test was abnormal and diagnostic of pathological hypersomnolence. (Tr. 223.) The results were consistent with a diagnosis of narcolepsy. (Tr. 223.) Plaintiff also submitted to a sleep study, which was consistent with very mild/borderline obstructive sleep apnea. (Tr. 225-27.) He demonstrated an increase in periodic limb movements, which had an unclear significance. (Tr. 225.)

Dr. Alkawadii saw Plaintiff at the neurology department on July 28, 2008. (Tr. 219-220.) Plaintiff presented with a history of narcolepsy and reported his history of cataplectic events. (Tr. 220.) Dr. Alkawadii noted that the sleep study was consistent with narcolepsy and placed Plaintiff on Ritalin. (Tr. 219.) Plaintiff returned on November 10, 2008 and reported some side effects of medication. (Tr. 217.) He advised that he naps for one

to ten minutes all through the day and has four to five cataplectic events per day. (Tr. 217.) Dr. Alkawadii increased Plaintiff's dosage of Ritalin and told him to return for a follow-up appointment in three months. (Tr. 216.)

On October 30, 2008, Dr. Alkawadii wrote that Plaintiff has narcolepsy, which is a chronic neurological disorder caused by the brain's inability to regulate sleep cycles. (Tr. 243.) He indicated that patients usually have no control over their sleep. (Tr. 243.) Sleep may occur at any time during the day and usually lasts for seconds to minutes. (Tr. 243.) In addition, patients may also experience excessive daytime sleepiness. (Tr. 243.) Symptoms may also include cataplexy, vivid hallucinations during sleep onset, and sudden, brief episodes of generalized paralysis. (Tr. 243.) The neurologist indicated that the sleep study performed on June 24, 2008 confirmed Plaintiff's diagnosis. (Tr. 243.)

State Agency physicians reviewed the evidence and determined that, as a result of his medical condition, Plaintiff should avoid all exposure to dangerous hazards such as unprotected heights, open flames, and moving and open machinery. (Tr. 198; 210.) These physicians also indicated that Plaintiff should never climb ladders, ropes, or scaffolds and should only occasionally climb ramps or stairs. (Tr. 196; 208.)

### 3. Plaintiff's Hearing

At the hearing on November 13, 2008, Plaintiff testified that his symptoms consist of uncontrollable sleep. (Tr. 27.) He falls asleep for two to three minutes or more, and this can occur at any time, numerous times throughout the day. (Tr. 27.) These episodes occur daily. (Tr. 27.) He also advised that he has cataplectic episodes approximately four to five times

4

per day. (Tr. 37-38.) When these occur, he has uncontrollable muscle spasms, cannot move, and does not comprehend what is going on. (Tr. 39.) These last for a few minutes or longer. (Tr. 39.) He also reported that hallucinations sometimes accompany these episodes. (Tr. 42.) His neurologist has prescribed medication. (Tr. 23.) He is taking the medicine that he was given, but it has not been effective. (Tr. 23.) His doctor recently increased his dosage. (Tr. 23.)

Plaintiff acknowledged that he has had many jobs but lost most of them. (Tr. 44.) This is because he was unable to perform on the job the way he should. (Tr. 44.) He indicated that others knew that he was "dealing with certain issues." (Tr. 44.) Plaintiff further testified that he has a three-year-old child and two ten-month-old twins, but his wife mostly deals with the children because he falls asleep. (Tr. 45.) He attends classes at church four times per week but falls asleep all the time. (Tr. 45-46.)

Plaintiff testified that he has not received treatment for his narcolepsy since he was a child. (Tr. 50-51.) Plaintiff maintained that he did not receive treatment earlier because he was living in Oklahoma City, and there was no indigent health care available. (Tr. 28-29.) He moved to Dallas in approximately 2005. (Tr. 30.) He did not learn that he could obtain medical care until he found out about the Parkland Healthcare Plus Plan, at which time he was able to see a neurologist. (Tr. 54.)

Plaintiff's wife testified that Plaintiff has cataplectic seizures that last for a couple of seconds to a couple of minutes and involve shaking, twitching, or jerking. (Tr. 58-59.) He also has "sleep attacks," during which Plaintiff strains to keep his eyes open or sometimes

5

just passes out. (Tr. 58.) She testified that Plaintiff was unable to obtain medical care in Oklahoma. (Tr. 59.) They have been in Texas for two years, and Plaintiff was able to sign up for the Parkland Health Plus Program. (Tr. 59-60.)

She reported that Plaintiff rarely takes care of the children. (Tr. 63.) He has difficulty getting dressed in the mornings because he might fall asleep if he sits down. (Tr. 63.) She reported that there has been no difference in his condition with medication. (Tr. 63.)

The VE testified that Plaintiff has past relevant work as a cafeteria attendant (light, unskilled, SVP of 2) and a security guard (light, semi-skilled, SVP of 3). (Tr. 65.) She testified that an individual with Plaintiff's same age, education, and work experience, who could perform work but should not work in dangerous environments, could perform the job of cafeteria attendant. (Tr. 65.) However, if an individual is frequently unable to maintain attention and would miss work at least 10% of the time, it would be difficult to maintain competitive employment. (Tr. 66.)

*C. The ALJ's Findings*

First, the ALJ found that Plaintiff last met the insured status requirements of the Act through December 31, 2004. (Tr. 13.) Second, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 30, 1999, the alleged onset date. (Tr. 13.) Third, she found Plaintiff's narcolepsy to be a severe impairment. (Tr. 13.) Fourth, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix I of the Regulations. (Tr. 14.) Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to

perform and maintain a full range of work at all exertional levels but that Plaintiff cannot work at heights or around dangerous machinery, cannot drive, and cannot work around open fires or in other dangerous environments. (Tr. 14.) In making this determination, the ALJ found the testimony of Plaintiff and his wife regarding the intensity, persistence, and limiting effects of Plaintiff's symptoms not credible due to a number of inconsistencies in the record. (Tr. 16.) Sixth, the ALJ found that Plaintiff is capable of performing past relevant work as a cafeteria worker. (Tr. 18.) Finally, she found that Plaintiff was not under disability, as defined by the Act, from September 30, 1999 through the date of the decision. (Tr. 18.)

## II. ANALYSIS

### *A. Standard of Review*

To be entitled to social security benefits, a plaintiff must prove that he is disabled for purposes of the Social Security Act. *Leggett v. Chater*, 67 F.3d 558, 563–64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988). The definition of disability under the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

The Commissioner utilizes a sequential five-step inquiry to determine whether a claimant is disabled. Those steps are:

1. An individual who is working and engaging in substantial gainful activity will

> not
> be found disabled regardless of medical findings.

> 2. An individual who does not have a "severe impairment" will not be found to be disabled.

> 3. An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

> 4. If an individual is capable of performing the work the individual has done in the past, a finding of "not disabled" must be made.

> 5. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f)).

Under the first four steps of the inquiry, the burden lies with the claimant to prove her disability. *Leggett*, 67 F.3d at 564. The inquiry terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id*.

The Commissioner's determination is afforded great deference. *Leggett*, 67 F.3d at 564. Judicial review of the Commissioner's findings is limited to whether the decision to deny benefits is supported by substantial evidence and to whether the proper legal standard was utilized. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C.A. § 405(g). Substantial evidence is defined as "that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla, but it need not be a preponderance." *Leggett*, 67 F.3d at 564. The reviewing court does not reweigh the evidence, retry the issues, or substitute its own judgment, but rather scrutinizes the record to

determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

### B. Issues for Review

Plaintiff contends that: (1) the ALJ failed to consider the functional limitations arising from all of Plaintiff's impairments; (2) the ALJ did not fulfill her duty to assist Plaintiff, who was not represented by counsel, in developing the medical record; and (3) the ALJ failed to properly evaluate Plaintiff's credibility. The Commissioner responds that: (1) the ALJ properly considered all of Plaintiff's impairments; (2) the ALJ fully developed the record; and (3) substantial evidence supports the ALJ's credibility analysis.

### C. The ALJ's Duty to Assist Counsel

In a claim for disability, the ALJ has a duty to develop the facts fully and fairly. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). If such duty is not satisfied, the resulting decision is not substantially justified. *Id.* The ALJ has a duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts" when a claimant is not represented by counsel. *Bowling v. Shalala,* 36 F.3d 431, 437 (5th Cir. 1994) (quoting *Kane v. Heckler,* 731 F.2d 1216, 1219-20 (5th Cir. 1984)).

As medical evidence, Plaintiff provided a letter written by Dr. Alkawadii that described Plaintiff's condition. In her decision, the ALJ noted that the doctor's "comments about what narcolepsy patients 'usually' or 'may' experience does not speak to the issue of what the claimant may (or may not) have been experiencing." (Tr. 16.) Plaintiff argues that the ALJ should have recontacted Dr. Alkawadii for clarification if he felt the letter was too general and did not specifically address Plaintiff's impairments and limitations and that,

9

therefore, the ALJ failed to fully develop the facts.

>The Regulations provide:
>
>"When the evidence we receive from your treating physician . . . is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or decision. . . . We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§ 404.1512(e), 404.912(e).

Here, the ALJ did not determine that Dr. Alkawadii's records were inconclusive or inadequate and, therefore, did not have a reason to recontact Dr. Alkawadii. Dr. Alkawadii's records do not contain a conflict or ambiguity and appear to based on medically acceptable diagnostic techniques. Although the letter alone may not contain much information regarding Plaintiff's specific condition, Dr. Alkawadii provided other medical records that do address Plaintiff specifically. Furthermore, the record contains ample evidence from a variety of sources.

Plaintiff also argues that Social Security Rulings 96-2p and 96-5p require the ALJ to recontact the treating physician for additional information. SSR 96-2p states that, in some cases, additional development may provide requisite support for a treating source's opinion, but it does not specify when an ALJ must undertake additional development. *See* SSR 96-2p, 1996 WL 374188, *4. However, it does provide that "development should not be undertaken . . . if the case record is otherwise adequately developed." *Id.* As previously discussed, the record in this case contained adequate evidence from a variety of sources and needed no

further development.

SSR 96-5p requires the ALJ to make "every reasonable effort" to recontact a treating source when the evidence does not support a treating source's opinion and the ALJ cannot ascertain the basis of the opinion from the case record. SSR 96-5p, 1996 WL 374183, *6. The ALJ found that the letter was not probative of Plaintiff's specific symptoms, not that it contained a medical opinion unsupported by the record. Therefore, SSR 96-5p does not apply in this instance. The Court finds that the ALJ fully and fairly developed the record.

### *D. Credibility Determination*

Plaintiff contends that the ALJ failed to properly evaluate the credibility of Plaintiff and his wife. When the claimant establishes the existence of a medically determinable impairment that could reasonably be expected to produce the alleged symptoms, the ALJ must evaluate the intensity, persistence, and functionally limiting effects of those symptoms to determine the extent to which they affect the individual's ability to do basic work activities. SSR 96-7p, 1996 WL 374186, *2. This requires the ALJ to make a finding concerning the credibility of the claimant's statements about the symptoms and their functional effects. *Id.* The Commissioner has set forth various factors, in addition to the medical evidence, that the ALJ should consider when assessing the credibility of an individual's statements.[1] *Id.* Although a credibility determination is entitled to considerable

---

[1] These factors include: the location, duration, frequency, and intensity of the individual's pain or other symptom; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side-effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any measures other that treatment the individual uses or has used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p.

11

deference, the ALJ must articulate credible and plausible reasons for rejecting subjective complaints. *See id.*; *see also Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994).

Here, the ALJ found that the statements of Plaintiff and his spouse concerning the intensity, persistence, and limiting effects of his symptoms were not credible due to inconsistencies throughout the record. The ALJ cited several reasons to support this determination. Although the ALJ may not have addressed each of the factors in perfect narrative fashion, the Court finds there was adequate consideration of the listed factors. *See Falco*, 27 F.3d at 163-64 (finding that neither fairness nor accuracy was compromised when the ALJ failed to follow formalistic rules in his articulation).

First, the ALJ found that the absence of medical treatment for narcolepsy until January 2008 diminished Plaintiff's credibility. (Tr. 16.) Plaintiff contends it was improper to discredit Plaintiff's testimony based on Plaintiff's failure to seek treatment or take medication because he testified he could not afford treatment and was unaware of the availability of treatment until he found out about the Parkland Healthcare Plus Program. Failure to follow treatment may be excused due to lack of financial resources. *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). However, Plaintiff has to show not only that he could not afford treatment, but that he could find no way to obtain treatment. *See id.* Plaintiff moved to Dallas in approximately 2005, yet did not seek treatment for narcolepsy from Parkland until 2008. Plaintiff has failed to present sufficient evidence that he has unsuccessfully attempted to obtain additional medical attention prior to 2008. In fact, Plaintiff asked the Parkland Ambulatory Care Clinic for a referral to a neurologist in August

12

2007, but Plaintiff did not return to see a neurologist for almost six months. (Tr. 234; 236.)

The ALJ also noted that although Plaintiff testified he suffered from narcolepsy since age 11, Plaintiff has previously engaged in work activity. No evidence showed that his narcolepsy worsened at or near the time Plaintiff ceased working in 1999. In fact, Plaintiff testified that the symptoms have not gotten worse over time. (Tr. 37.) Plaintiff argues that the ALJ did not consider that out of 29 jobs, only 2 were performed at substantial gainful activity level. He further argues that the ALJ failed to consider whether special accommodations were made for him by his employers. However, beyond Plaintiff's own testimony, there is no evidence to support the assertion that employers made special accommodations. Plaintiff never indicated such on his Work History Reports, and he admits that he performed two jobs at substantial gainful activity level. Furthermore, the fact that Plaintiff performed work was but one factor in the ALJ's credibility analysis.

The ALJ also noted that the medical records contradicted his testimony. Plaintiff testified that he falls asleep and experiences cataplectic episodes every day. (Tr. 15.) However, the ALJ observed that one examination showed that Plaintiff made no mention of narcolepsy and denied a past history of neurological disorders. (Tr. 15-17; 240-41.) Other records show no evidence of any exertional limitations. (Tr. 15-16; 193; 230-31; 234.) Dr. Motgi indicated that if Plaintiff is treated for narcolepsy, "the prognosis is fairly good for gainful employment." (Tr. 193.)

Finally, the ALJ noted Plaintiff's daily activities include attending church many days per week and performing some work at church. The ALJ did not exclusively rely on

13

Plaintiff's daily activities when finding him not credible but, rather, properly considered daily activities as only one factor. *Compare Leggett*, 67 F.3d at 565, n.12 ("It is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status"), *with Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991) (noting that exclusive reliance on daily activities may be inappropriate).

The record clearly shows that the ALJ gave very thorough consideration to the evidence in its entirety and found numerous contradictions between Plaintiff's allegations, his testimony, his wife's testimony,[2] and the medical evidence. The Court finds that substantial evidence supports the ALJ's credibility determination.

### *E. Consideration of All Impairments*

Plaintiff argues that the ALJ failed to consider all of Plaintiff's impairments and that, therefore, the decision is not supported by substantial evidence. Specifically, he contends that (1) the ALJ should have found his cataplexy and sleep apnea to be severe impairments and (2) the ALJ failed to give proper weight to the State Agency physicians' opinions.

#### 1. Cataplexy and Sleep Apnea

Cataplexy is a symptom of narcolepsy, which the ALJ found severe. Therefore, when the ALJ determined Plaintiff's limitations due to narcolepsy, he also considered Plaintiff's allegations of cataplexy. The record contains two instances that support Plaintiff's allegations

---

[2] Plaintiff's wife's testimony was similar to the testimony of Plaintiff and was, therefore, properly determined to be not credible for the same reasons.

of cataplexy. First, Plaintiff and his wife both testified that he has cataplectic episodes throughout the day. However, as previously discussed, the ALJ found their testimony not credible due to inconsistencies in the record. Furthermore, no medical records show any objective physical findings of cataplexy. Second, Dr. Alkawadii wrote a letter in which he described cataplexy as a symptom that may accompany narcolepsy. However, the ALJ noted that Dr. Alkawadii's letter concerned narcolepsy in general and was not probative of Plaintiff's specific symptoms. Therefore, the record shows that the ALJ properly considered the allegations of cataplexy when evaluating Plaintiff's functional limitations.

Plaintiff argues that the ALJ erred by failing to consider whether sleep apnea further limited his ability to perform work. However, Plaintiff never alleged that sleep apnea was a disabling condition or that he experienced any limitations due to sleep apnea in his application for benefits, his request for reconsideration, his disability report-appeal, his administrative hearing, or his request for review of the ALJ's decision. In fact, Plaintiff testified that he had no other medical conditions other than narcolepsy. (Tr. 49.) Because Plaintiff has not raised the issue of sleep apnea until this appeal, the ALJ was not under an obligation to consider a condition that was not alleged to be disabling. *See Leggett*, 67 F.3d at 566. Moreover, no evidence exists that sleep apnea had any impact on Plaintiff's ability to perform work. The mere mention of a condition or a diagnosis in the medical records does not establish a disabling impairment or even a significant impact on that person's functional capacity. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983).

2. Opinions of State Agency medical consultants

Plaintiff also argues that the ALJ erred by failing to refer to the opinions of the State Agency medical consultants or provide any basis for rejecting their opinion that Plaintiff could only climb ramps and stairs occasionally. However, the ALJ specifically stated that she "carefully considered" the two State Agency medical consultants' opinions and also noted that her assessment of postural limitations differed. (Tr. 18.) She further noted that the RFC assessment was based on the record as a whole, including the hearing testimony, which she found not credible. (Tr. 18.) Additionally, the State Agency medical consultants rendered their opinions in June and August 2007. (Tr. 201; 213.) Thus, unlike the ALJ, they did not review a complete record of Plaintiff's medical history, which included reports through November 2008. Furthermore, although the ALJ must consider the opinion of a state agency medical consultant, he is not bound by the findings. 20 C.F.R. §§ 404.1527(f), 416.927(f). Any conflict in evidence, including medical opinions, are resolved by the Commissioner, not the courts. *Newton v. Apfel*, 209 F.3d 448, 457 (5th Cir. 2000). No error occurred.

## IV. RECOMMENDATION

For the foregoing reason, the Court recommends that the decision of the Commissioner be AFFIRMED.

SO RECOMMENDED, February 25, 2011.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections within fourteen days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within fourteen days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).